**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ZENOVIO PABLO CANTU and ADAN HERNANDEZ, Individually and on Behalf of All Others Similarly Situated,**<br><br>     **Plaintiffs,**<br><br>**-against-**<br><br>**KALAHOSPITALITYGROUP LLC, ALOHA BROTHERS, LLC, MAHALO BROTHERS LLC, DAVID HOM, and DAVID CHAN, Jointly and Severally,**<br><br>     **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Zenovio Pablo Cantu and Adan Hernandez (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1. Plaintiffs are delivery and back of the house employees at Defendants' restaurants located in Manhattan, New York.  For their work, during the relevant time period, Plaintiffs were

not paid minimum wage for all hours worked and were not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiffs bring this action to recover unpaid minimum wage and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread of hours premiums, failure to pay wages, unreimbursed business expenses, and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York during the six (6)-year period, plus COVID-19 tolling, preceding the filing of this complaint.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.    On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

8.    Plaintiff Zenovio Pablo Cantu ("Pablo Cantu") was, at all relevant times, an adult individual residing in New York County, New York.

9.    Plaintiff Adan Hernandez ("Hernandez") was, at all relevant times, an adult individual residing in New York County, New York.

10.    Throughout the relevant time period, Plaintiffs performed work for Defendants at

two (2) of their four (4) at Makana Hawaiian Eatery locations: 1502 Amsterdam Avenue, New York, NY 10031 (the "Hamilton Heights Location") and 1329 Saint Nicholas Avenue, New York, NY 10033 (the "Washington Heights Location").

11.     Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

12.     KALAHOSPITALITYGROUP LLC is an active New York Corporation doing business as "Makana Hawaiian Eatery," with its principal place of business at 1502 Amsterdam Avenue, New York, NY 10031.

13.     According to the New York State Department of State, Division of Corporations, KALAHOSPITALITY GROUP LLC was registered on January 17, 2020.

14.     MAHALO BROTHERS LLC is an active New York Corporation doing business as "Makana Hawaiian Eatery," with its principal place of business at 1329 Saint Nicholas Avenue, New York, NY 10033.

15.     According to the New York State Department of State, Division of Corporations, MAHALO BROTHERS LLC was registered on January 30, 2017.

16.     ALOHA BROTHERS, LLC is an active New York Corporation doing business as "Makana Hawaiian Eatery," with its principal place of business at 1502 Amsterdam Avenue, New York, NY 10021.

17.     According to the New York State Department of State, Division of Corporations, ALOHA BROTHERS, LLC was registered on April 21, 2017.

18.     KALAHOSPITALITY GROUP LLC, MAHALO BROTHERS LLC, and ALOHA BROTHERS, LLC, are hereinafter referred to collectively as the "Corporate Defendants" or

"Makana Hawaiian Eatery".

19.      The Corporate Defendants are employers of Plaintiffs and the Collective and Class Members.

20.      Upon information and belief, <u>Defendant David Hom</u> ("Hom") is an owner and operator of the Corporate Defendant.

21.      Upon information and belief, <u>Defendant David Chan</u> ("Chan" and, collectively with Hom, the "Individual Defendants" and, together with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendant.

22.      According to the New York State Department of State, Division of Corporations records, Defendant Hom appears as the DOS service of process recipient for KALAHOSPITALITY GROUP LLC, MAHALO BROTHERS LLC, and ALOHA BROTHERS, LLC.

23.      The Individual Defendants maintained operational control over the Corporate Defendants and managed all Makana Hawaiian Eatery restaurants by determining the wages and compensation of employees, paying employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

24.      The Individual Defendants employed Plaintiffs, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

25.      The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and are each "employers" pursuant to the FLSA,

29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

26.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

27.    At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

28.    At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

29.    Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

30.    Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since May 25, 2018, and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Makana Hawaiian Eatery located at 1502 Amsterdam Avenue, New York, NY 10031 and/or 1329 Saint Nicholas Avenue, New York NY 10033 (the "Collective Action Members").

31.    A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required

minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

32.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

33.     Pursuant to the NYLL, Plaintiffs bring their Third through Ninth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since October 9, 2014 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at Makana Hawaiian Eatery located at 1502 Amsterdam Avenue, New York, NY 10031 and/or 1329 Saint Nicholas Avenue, New York, NY 10033 (the "Class Members").

34.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

35.     The Class Members are so numerous that joinder of all members is impracticable.

36.     Upon information and belief, there are in excess of forty (40) Class Members.

37.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

> a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;
>
> b.   whether Defendants failed to keep true and accurate time records for all hours

worked by Plaintiffs and the Class Members;

c.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

d.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members spread of hours premiums for days when they worked in excess of ten hours and/or worked a split shift;

f.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members all wages they were owed for a given week within (7) days after end of that week;

g.  whether Defendants required Plaintiffs and the Class Members to pay out of pocket for business expenses including bicycles to perform deliveries and failed to reimburse these expenses;

h.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

i.  whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

j.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

k.  whether Defendants are liable for all damages claimed hereunder, including but

not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

38. <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, were non-management restaurant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, did not receive spread of hours pay for days when they worked in excess of ten (10) hours, did not receive all wages owed for a given week within seven (7) days of the end of that week, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

39. <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

40. Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

41. <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

42. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. The individual members of the class have no interest or capacity to bring separate actions; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action. While Plaintiffs are aware of another litigation pending

as to the Upper West Side Location, Plaintiffs are unaware of any other pending litigation as to the Hamilton Heights Location and/or the Washington Heights Location.

## STATEMENT OF FACTS

### Defendants' Restaurant Business

43. Throughout the relevant time period, according to Defendants' website at https://www.makanabbq.com/locations-5, Defendants have owned, operated and managed four (4) locations of Makana Hawaiian Eatery (collectively, the "Makana Restaurant Enterprise"), all located in Manhattan, New York: 161 W 106th Street, New York, NY 10025 (the "Upper West Side Location"), 1502 Amsterdam Avenue, New York, NY 10031 (the "Hamilton Heights Location"), 1329 Saint Nicholas Avenue, New York, NY 10033 (the "Washington Heights Location"), and 2245 1st Avenue, New York, NY 10029 (the "East Harlem Location").

44. Menus, contact information, catering and online ordering is available for all locations of Makana Hawaiian Eatery through their website https://www.makanabbq.com/.

45. Upon information and belief, Defendants operate the Makana Restaurants as a single enterprise/joint employer using common policies and practices.

46. Upon information and belief, the Individual Defendants own, operate and manage the Hamilton Heights Location through defendanants KALAHOSPITALITYGROUP LLC and ALOHA BROTHERS, LLC.

47. Upon information and belief, the Individual Defendants own, operate and manage the Washington Heights Location through defendant MAHALO BROTHERS LLC.

48. Defendant David Hom is listed as the DOS Process address for all three (3) Corporate Defendants in the Corporate Defendants' Entity Information with the New York State Department of State, Division of Corporations.

49.     Upon information and belief, the Individual Defendants also manage the Upper West Side Location and/or East Harlem Locations via KDD Restaurant Group LLC (now inactive), 2245 Restaurant Group LLC, Aloha Harlem LLC and WLK Restaurant Group. Defendant Hom is listed the as the DOC Process address for 2245 Restaurant Group LLC.

50.     Throughout the relevant time period, Defendant Hom was frequently present at the Hamilton Heights Location and the Washington Heights Location, where he supervised employees, oversaw business operations, and paid employees, managed the operations of the restaurant and took an active role in ensuring that the business was run in accordance with Defendants' policies and procedures.  Plaintiff Pablo Cantu also observed when he ran errands at the other locations that Defendant Hom frequently was present at the Upper West Side Location and Harlem Location.

51.     Upon information and belief, Defendants Hom and Chan are active in the operation and management of the Makana Restaurant Enterprises, including the Hamilton Heights and Washington Heights Locations.

52.     According to articles published about the Makana Restaurants[1], Defendants Hom and Chan founded the Makana Restaurant Enterprise, actively manage the restaurants, and have the authority to make and do in fact make all major business decisions regarding operations, policies and practices of the Makana Restaurant Enterprise.

53.     The Individual Defendant frequently sent employees including Plaintiff Pablo Cantu to transfer food and other supplies among the four (4) locations.

---

[1] https://www.dnainfo.com/20110204/harlem/restaurant-brings-hawaiian-japanese-flavors-east-harlem; https://www.wsj.com/articles/SB10001424052702303281504579220402763070262

**Plaintiffs' Work for Defendants**

54.     **Plaintiff Zenovio Pablo Cantu** has been employed by Defendants at the Hamilton Heights Location since on or about October 9, 2017 through the present (the "Pablo Cantu Employment Period"), where he primarily makes deliveries on his bicycle and also performs some back of the house work, including unloading food deliveries and storing them in the basement. He also is sometimes required to bring food items and other supplies to and from the Hamilton Heights Location and the three (3) other locations of Makana Hawaiian Eatery.

55.     Plaintiff Pablo Cantu spends approximately seventy percent (70%) of his typical workweek performing deliveries and approximately thirty percent (30%) performing back of the house work.

56.     Throughout the Pablo Cantu Employment Period, Plaintiff Pablo Cantu went by the name "Raul Pablo" because it was simpler for his co-workers and managers to remember and pronounce.

57.     Throughout the Pablo Cantu Employment Period, Plaintiff Pablo Cantu has typically worked six (6) days per week, with most Tuesdays off. From the beginning of the Pablo Cantu Employment Period through in or around March 2020, before the COVID-19 pandemic, Plaintiff Pablo Cantu typically worked the following hours: Mondays through Saturdays from approximately 10:30 am to between approximately 9:30 pm and 10:00 pm; and on Sundays from approximately 11:30 am to approximately 10:00 pm or longer, for a total of approximately sixty-five (65) to sixty-eight (68) hours per week.

58.     From in or around March 2020 to the present, Plaintiff Pablo Cantu has worked a slightly reduced schedule. Specifically, Plaintiff Pablo Cantu is now required to work six (6) days per week, with most Tuesdays off, with the following schedule: Mondays through Saturdays, from

approximately 10:30 am to between approximately 9:00 pm and 9:30 pm; and on Sundays from approximately 11:30 am to approximately 9:30 pm, for a total of approximately sixty-two (62) to sixty-five (65) hours per week.

59.    Throughout the Pablo Cantu Employment Period, Plaintiff Pablo Cantu is rarely able to take a break, particularly Fridays through Sundays, when the restaurant is the busiest.

60.    Throughout the Pablo Cantu Employment Period, Plaintiff Pablo Cantu has been paid fifty dollars ($50.00) per day, for a total of three hundred dollars ($300.00) per week.

61.    Plaintiff Pablo Cantu is able to keep cash tips from the deliveries he makes; however, most of the delivery orders are placed through a food delivery platform such as Grubhub and Seamless. At the beginning of the Pablo Cantu Employment Period, Defendants withheld twenty percent (20%) of credit card tips paid by customers. When Plaintiff Pablo Cantu complained about this practice, Defendants reduced the amount they withheld to ten percent (10%) of credit card tips. Defendant Hom told Plaintiff Pablo Cantu that he withholds the tips in order to pay for the food delivery platform fees.

62.    As a delivery employee, Plaintiff Pablo Cantu is required to use his own bicycle and pay the maintenance expenses such as flat tires.  At no time has Plaintiff Pablo Cantu been reimbursed by Defendants for any maintenance-related expenses.

63.    Throughout the Pablo Cantu Employment Period, Plaintiff Pablo Cantu has been paid his wages in cash.

64.    Plaintiff Pablo Cantu observed at least six (6) to seven (7) employees working for Defendants at any given time at each of their four (4) locations, including one (1) to two (2) front of the house employees, two (2) delivery employees, and two (2) to three (3) back of the house employees.

65.    **__Plaintiff Adan Hernandez__** was employed by Defendants at two (2) of Defendants'
locations from in or around May 15, 2019 to on or about November 20, 2020 (the "Hernandez
Employment Period"). During this period, Plaintiff Hernandez worked at the Washington Heights
Location for approximately one (1) month at the beginning of his employment period and at the
Hamilton Heights location from in or around June 2019 to the end of the Hernandez Employment
Period.

66.    During the Hernandez Employment Period, Plaintiff Hernandez primarily made
deliveries on foot and using his bicycle and also performed some back of the house work, including
unloading deliveries and storing them in the basement, cleaning the premises of the restaurants,
and collecting and putting out the garbage for collection.

67.    Plaintiff Hernandez spent approximately seventy percent (70%) of his typical
workweek performing deliveries and approximately thirty percent (30%) performing back of the
house work.

68.    For approximately the first month of the Hernandez Employment Period, when
Plaintiff Hernandez worked at the Washington Heights Location, he typically worked two (2) days
per week, covering for other delivery employees on their day off. During this time, he typically
worked one full day shift from approximately 11:00 am to 10:00 pm and one half-day shift from
approximately 5:00 pm to between approximately 10:00 pm and 10:30 pm, for a total of
approximately sixteen (16) to sixteen and one-half (16.5) hours per week.

69.    From in or around June 2019 to in or around March 2020, Plaintiff Hernandez was
typically required to work four (4) days per week, with the following schedule:  Tuesdays, from
approximately 11:00 am to between approximately 10:00 pm and 10:30 pm, and Fridays,
Saturdays and Sundays, from approximately 5:00 pm to between approximately 10:00 pm and

10:30 pm, for a total of approximately twenty-six (26) to twenty-eight (28) hours per week.

70.     From in or around March 2020, at the beginning of the COVID-19 pandemic, until the end of the Hernandez Employment Period, Plaintiff Hernandez worked a slightly reduced schedule. During this period he continued to work four (4) days per week with the following schedule:  Tuesdays from approximately 11:00 am to between approximately 9:00 pm and 9:30 pm, and Fridays, Saturdays, and Sundays from approximately 5:00 pm to between approximately 9:00 and 9:30 pm, for a total of approximately twenty-two (22) to twenty-four (24) hours per week.

71.     Throughout the Hernandez Employment Period, Plaintiff Hernandez was rarely able to take a break, particularly Fridays through Sundays, when the restaurant was the busiest.

72.     Throughout the Hernandez Employment Period, Plaintiff Hernandez was paid fifty dollars ($50.00) per day when he worked a full-day shift, typically on Tuesdays, and twenty-five dollars ($25.00) when he worked a half-day shift, typically Fridays through Sundays. During the first month of the Hernandez Employment Period, Plaintiff Hernandez was typically paid seventy-five dollars ($75.00) per week. For the remainder of the Hernandez Employment Period, Plaintiff Hernandez was typically paid one hundred and twenty-five dollars ($125.00) dollars per week.

73.     Throughout the Hernandez Employment Period, Plaintiff Hernandez was paid in cash.

74.     Plaintiff Hernandez was able to keep cash tips from the deliveries he made; however, most of the delivery orders are placed through a food delivery platform such as Grubhub and Seamless. Throughout the Hernandez Employment Period, Defendants withheld ten percent (10%) of credit card tips paid by customers.

75.     As a delivery employee, Plaintiff Hernandez was required to use his own bicycle and pay the maintenance expenses such as flat tires.  At no time was Plaintiff Hernandez

reimbursed by Defendants for any maintenance-related expenses.

76.    At no time during the relevant time period did Defendants provide Plaintiffs with any means of tracking his hours worked.

77.    At no time during the relevant time period were Defendants eligible of claiming the tip credit in calculating Plaintiffs' wages, as Defendants failed to provide Plaintiffs with written notification of the tip credit in their primary language, Spanish, and withheld a portion of Plaintiffs' tips, and as Plaintiffs typically performed non-tipped work for a substantial portion, approximately thirty percent (30%) of their workweek.

78.    As a result of Defendants' policies of paying a flat daily rate, at no time during the relevant time period did Plaintiffs receive overtime premium pay consisting of one and one-half (1.5) times their regular hourly rate for hours they worked in excess of forty (40) hours per week, nor did they receive spread of hours premium pay consisting of one (1) extra hour's pay at the applicable minimum wage for days that that they worked in excess of ten (10) hours per day, which they typically did one (1) or more days per week. Throughout the relevant time period, Defendants paid Plaintiffs a flat daily rate that, when divided by the number of hours worked by Plaintiffs, yielded an effective hourly rate that fell well below the statutory minimum wage.

79.    Throughout the relevant time period, Plaintiffs incurred business expenses, specifically bicycle maintenance expenses such as replacing flat tires, due to their job duties of making deliveries. At no time did Defendants reimburse Plaintiffs for any of these expenses. As a result, Plaintiffs' effective hourly was further reduced by these expenses.

80.    At no time during the relevant time period did Defendants provide Plaintiffs with a paystub or wage statement with their payment of wages showing their hourly rate(s), any deductions or withholdings taken by Defendants, their gross wages, and their hours worked.

81.     At no time during the relevant time period did Defendants provide Plaintiffs with a wage notice setting forth their hourly rate(s), any deductions or credits used by Defendants in calculating their wages, their regular payday, or other information required by NYLL § 195(1)(A) in their native language, which is Spanish.

82.     At no time during the relevant time period did Defendants provide Plaintiffs with a notification that Defendants were taking the tip credit, the amount of any tip credit claimed by Defendants, or an explanation of the tip credit, in English or their native language, Spanish.

**Defendants' Unlawful Corporate Policies**

83.     Plaintiffs and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, and spread-of-hours premiums, failing to reimburse business expenses, and failing to provide wage notices and wage statements.

84.     Plaintiffs have spoken with and are aware of other employees of Defendants who were similarly paid flat daily rates that below minimum wage for all hours worked and did not receive overtime premiums when they worked in excess of forty (40) hours per week or spread-of-hours premiums when they worked in excess of ten (10) hours in a day. Defendants' failure to pay minimum wages, overtime premiums and spread-of-hours premiums are corporate policies of Defendants that apply to all non-management employees throughout the Class Period.

85.     Plaintiffs have spoken with and are aware of other employees of Defendants who were required to pay for business expenses, including but not limited to bicycle maintenance costs, and at no time received reimbursement for these costs, such their effective hourly rates were further reduced.

86.     Plaintiffs have spoken with and are aware of other employees of Defendants who

did not receive wage notices, tip credit notifications as to tipped employees, or wage statements or paystubs. Defendants' failure to provide wage notices, tip credit notifications, and wage statements are corporate policies of Defendants that apply to all non-management employees throughout the Class Period.

87.     Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.

88.     Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

## FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

64.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

65.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

66.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

67.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full

unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
**(Brought on Behalf of Plaintiff Pablo Cantu and the Collective Action Members)**

68.     Plaintiff Pablo Cantu, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

69.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

70.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

71.     Defendants' failure to pay overtime caused Plaintiff Pablo Cantu and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff Pablo Cantu and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
#### (Brought on Behalf of Plaintiffs and the Class Members)

72.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

73.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

74.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
#### (Brought on Behalf of Plaintiff Pablo Cantu and the Class Members)

75.     Plaintiff Pablo Cantu, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

76.     Defendants willfully violated Plaintiff Pablo Cantu's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

77.     Defendants' failure to pay overtime premium compensation caused Plaintiff Pablo Cantu and the Class Members to suffer loss of wages and interest thereon.  Plaintiff Pablo Cantu and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

78.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

80.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## SIXTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW - FAILURE TO PAY WAGES</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

81.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.     Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiffs and the Class Members are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which wages are earned." Thus, Defendants violated NYLL § 191 by failing to pay Plaintiffs and the Class Members all of their wages earned within the week such wages were due.

83.     Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and the Class Members, that is not otherwise authorized by law or by the employee.

84.     By withholding wages and overtime compensation from Plaintiffs and the Class Members, pursuant to NYLL § 193 and the cases interpreting same, Defendants made unlawful deductions in wages owed to Plaintiffs and the Class Members.

85.     Defendants' failure to pay Plaintiffs and the Class Members wages of any kind for several hours of work each week violated NYLL §§ 191 and 193.

86.     Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

87.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

89.     Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendant fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**EIGHTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

90.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

92.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**NINTH CAUSE OF ACCTION**
**NEW YORK LABOR LAW – UNLAWFUL BUSINESS EXPENSE DEDUCTIONS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

93.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.     Defendants have forced Plaintiffs and the Class Members to pay to Defendants out-of-pocket expenses of Defendants' business without reimbursement.

95.     Accordingly, Defendants are required to compensate Plaintiffs and the Class Members for all business expenses that Defendants wrongly made Plaintiffs and the Class Members cover.

96.     Defendants' improper business expenses charged to Plaintiffs caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants the amount that Defendants took from their wages in the form of deductions, damages for unreasonably delayed payment of wages liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL § 663, *et seq.*

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.      An order tolling the statute of limitations;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

i.      Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.      Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per

Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.      An award of damages arising out of the unreimbursed business expenses;

l.      An award of liquidated damages arising out of the unreimbursed business expenses;

m.      An award of prejudgment and post-judgment interest;

n.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

o.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       May 25, 2021

                                        Respectfully submitted,

                                        **PELTON GRAHAM LLC**

                                        By: _____

                                        Brent E. Pelton (BP 1055)
                                        pelton@peltongraham.com
                                        Taylor B. Graham (TG 9607)
                                        graham@peltongraham.com
                                        111 Broadway, Suite 1503
                                        New York, NY 10006
                                        Telephone: (212) 385-9700
                                        Facsimile: (212) 385-0800

                                        *Attorneys for Plaintiffs and the putative*
                                        *FLSA Collective and Class*

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of KALAHOSPITALITYGROUP LLC, ALOHA BROTHERS, LLC, and MAHALO BROTHERS LLC are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective and class they seek to represent, intend to enforce your personal liability, as the ten (10) largest shareholders KALAHOSPITALITYGROUP LLC, ALOHA BROTHERS, LLC, and MAHALO BROTHERS LLC and to charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6)-year period preceding the filing of the complaint.

Services for the above-referenced corporation is ongoing through the filing date of this complaint.

Dated: May 25, 2021

_____
Brent E. Pelton, Esq.

*Attorneys for Plaintiffs and the putative
FLSA Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of KALAHOSPITALITYGROUP LLC, Mahalo Brothers LLC, Aloha Brothers LLC, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.



_____          _____
Signature                                 Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de KALAHOSPITALITYGROUP LLC, Mahalo Brothers LLC, Aloha Brothers LLC y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.



_____          _____
Firma                                     Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

# CONSENT TO BECOME PARTY PLAINTIFF

_below_, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest KALAHOSPITALITYGROUP LLC, Mahalo Brothers LLC, Aloha Brothers LLC, and/or their respective _affiliated_ companies, subsidiaries, contractors, officers, directors, officers, franchisees and/or affiliates to pay me _wages_ and minimum wages as required under state and/or federal law, and also authorize the filing of this _action(s)_ challenging such conduct. I authorize being **named as the representative plaintiff** in this _to make_ decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of _conducting_ this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, _and all other_ matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without _prepayment_ of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on _my behalf_ will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          _____
Signature                        Printed Name


## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de KALAHOSPITALITYGROUP LLC, Mahalo Brothers LLC, Aloha Brothers LLC y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____          _____
Firma                            Nombre Escrito   Adán Hernández


This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.