

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

December 1, 2021

**VIA ECF**

Hon. James L. Cott
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:  *Pablo Cantu, et al. v. Kalahospitalitygroup LLC, et al.*
>      **No. 21-cv-4664 (JLC)**

Dear Judge Cott:

This office represents named plaintiffs Zenovio Pablo Cantu ("Pablo Cantu") and Adan Hernandez ("Hernandez" and, with Pablo Cantu, the "Plaintiffs") in the above-referenced matter. We write, jointly with counsel for Kalahospitalitygroup LLC, Aloha Brothers LLC, Mahalo Brothers LLC (the "Corporate Defendants"), David Hom and David Chan (the "Individual Defendants" and, together with the Corporate Defendants, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's November 9, 2021 Order. (Dkt. No. 37). Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

### I.  Procedural History and Plaintiffs' Allegations

The Plaintiffs commenced this Action by filing a Class & Collective Action Complaint against Defendants in the Southern District of New York ("SDNY") on May 25, 2021. (Dkt. No. 1 (the "Complaint")). Defendants filed their Answer to the Complaint on August 9, 2021, denying all material allegations. (Dkt. No. 26 (the "Answer")).

In lieu of holding an initial conference in this matter, the Court ordered the parties to submit a proposed management plan and joint letter. (Dkt. No. 27). Upon the parties' request, the Court ordered the matter referred to Court-annexed mediation. (Dkt. No. 29). On October 15, 2021, the Court so-ordered a Confidentiality Stipulation entered into by the parties for production and exchange of confidential information for discovery and mediation purposes. (Dkt. No. 31).

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

In anticipation of mediation, the parties exchanged disclosures and discovery. Plaintiffs provided their delivery employee identification cards as well as damages computations. (Pelton Aff. ¶ 8). Defendants exchanged a spreadsheet showing certain tip information as well as financial materials including tax returns, bank account summaries, check copies, materials related to an unrelated litigation and settlement entered into by some of the Defendants, and materials related to other financial liabilities. (*Id.*).

On October 28, 2021, the parties participated in a mediation before Daniel Engelstein, Esq. The parties reached a settlement in principle at that time. (Pelton Aff. ¶ 11).

Over the following weeks, the Parties finalized the terms of the settlement and drafted and executed the Settlement Agreement attached as **Exhibit A**. The Settlement Agreement as well as the mediation proceedings have been translated into Spanish for each of the Plaintiffs by Belinda Herazo, whose Declaration detailing her translation work is attached as **Exhibit B**.

## II.   The Settlement Accounts for Litigation Risk

Plaintiffs alleged that they worked at two (2) of four (4) restaurant locations owned, operated and managed by Defendants under the name Makana Hawaiian Eatery. Plaintiffs alleged to have worked as delivery employees approximately 70% of the time and also performed back-of-the-house work such as unloading deliveries, cleaning, and bringing food and supplies from the other locations approximately 30% of the time.

Plaintiff Pablo Cantu alleges that he worked well in excess of forty (40) hours per week, typically between sixty-five and sixty-eight (65-68) hours per week, at Defendants' Hamilton Heights location. Plaintiff Hernandez alleges that he worked on a part-time basis, initially at Defendants' Washington Heights Location and for most of his employment at the Hamilton Heights Location. Plaintiffs both allege that they were paid a daily rate of fifty dollars ($50.00) for a full-day shift and twenty-five dollars ($25.00) for a half-day shift, which they were paid in cash.

Accordingly, Plaintiffs allege that they did not receive the New York statutory minimum wage, overtime premium or spread of hours premiums, and were not paid all wages owed to them in a timely fashion. Plaintiffs further allege that Defendants unlawfully withhold a percentage of their tips in order to pay the fees associated with online delivery platforms such as Grubhub and Seamless and that Plaintiffs were required to pay all expenses arising out of use of their personal bicycles out of pocket without reimbursement. Finally, Plaintiffs allege that they did not receive proper wage notices and wage statements per the requirements of NYLL §§ 195(1)(a), 195(3).

Throughout the litigation, the Parties have disputed several issues of fact and law. In Defendants' pre-mediation disclosures, Defendants disputed the length of employment and hours worked by Plaintiff Pablo Cantu and denied that Plaintiff Hernandez was employed at any of their restaurant locations. Defendants also provided tip records as to Plaintiff Pablo Cantu purporting to show that all tips were paid correctly. Plaintiffs maintain that these records fall far short of establishing the nature of Defendants' pay practices and provide no information as to hours

worked. While Plaintiffs believe that a factfinder would credit their testimony over Defendants, Plaintiffs recognize the risk they would face at trial in light of Defendants' records and testimony. In addition, Plaintiffs are aware that another wage and hour matter was filed against Defendants shortly before Plaintiffs filed their Action, and Defendants have asserted and provided financial information to support that, due in large part to COVID-19 as well as the previous lawsuit, they would be unable to pay a higher settlement or judgment.

In connection with Plaintiffs' pre-mediation disclosures, Plaintiffs created a damages analysis based upon their best recollection of their hours worked and wages paid. (Pelton Aff. ¶ 9). In total, as of October 21, 2021, when Plaintiffs exchanged their damages calculation in advance of the mediation, Plaintiffs' damages analysis calculated $157,580.36 in unpaid minimum wage, $40,055.71 in unpaid overtime, $15,353.57 in unpaid spread of hours premiums, $20,000.00 in wage statement and wage notice violations, $212,989.64 in liquidated damages at 100% of unpaid wages, and $38,015.16 in prejudgment interest for a grand total of $483,994.44 (*Id.*).

Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, even significantly higher damages, there is also the possibility that they would receive much lower damages, or nothing at all. As mentioned above, the Parties have disputes as to the facts and merits of Plaintiffs' claims, particularly as to the employment of Plaintiff Hernandez as well as Defendants' tip records. In addition, Defendants have strongly represented that they would be unable to satisfy a judgment representing a higher percentage of Plaintiffs' calculated damages. Accordingly, Plaintiffs prefers to settle now for an amount that they would be guaranteed to receive under the terms of the settlement.

The parties believe that the settlement amount (i.e., $52,500) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial and attempting to enforce a judgment.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $52,500.00 (the "Settlement Amount"). Of the Settlement Amount, $18,092.55 is payable to Plaintiffs' counsel (consisting of $888.82 in expense reimbursements and $17,203.73 in attorneys' fees). The remaining $34,407.47 is payable directly to Plaintiffs (the "Net Settlement Amount"). Payment will be made over the course of an initial payment and fourteen (14) monthly installments.

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

Magistrate Judge James L. Cott
FLSA Settlement Fairness Letter
Page **4** of **6**

The agreement includes a mutual non-disparagement provision between Plaintiffs and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123, 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980, 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588, 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

**IV.    Plaintiffs' Attorney's Fees and Expenses**

As set forth in the Affidavit of Brent E. Pelton, Esq., as of December 1, 2021, Plaintiffs' counsel has spent more than 92 hours in prosecuting and settling this matter, resulting in a lodestar of $25,153.24. *See* Pelton Decl. Ex. C. Plaintiffs' counsel has spent $888.82 in actual litigation costs. *Id.* at Ex. D. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $17,203.73) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, falls well below the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar have been approved in connection with recent wage and hour default judgments in the Southern and Eastern Districts of New York. *See Campos v. BKUK 3 Corp.*, No. 18-cv-4036, Dkt. No. 156 (Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates); *Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district.").. Similar rates are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York, including in FLSA/NYLL actions. *See, e.g.*, *Guallpa v. NY Pro Signs, Inc.*, No. 11-cv-3133, 2014 U.S. Dist. LEXIS 77033, at *27-*29 (S.D.N.Y. May 27, 2014) (awarding $300-$600 per hour for experienced FLSA attorneys); *Viafara v. MCIZ Corp.*, No. 12-cv-7452, 2014 U.S. Dist. LEXIS 60695, at *39-*41 (S.D.N.Y. Apr. 30, 2014) (finding reasonable hourly rates of $550 for senior partner and $350 for attorney identified as "counsel").

Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

**V.     The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce

employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including a mediation session before a neutral third-party and extended discussions and discovery and damages exchanges that took place over the course of several months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including disputed merits issues and Defendants' ability to pay a larger amount. Due to disputed issues of fact, the parties would likely need to engage in further formal discovery including written discovery, depositions, as well as motion practice including conditional collective and class certification, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*       *       *       *       *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

By: _/s Brent Pelton_
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
PELTON GRAHAM LLC
111 Broadway, Suite 1503
New York, NY 10006

*Attorneys for Plaintiffs*

By: _/s Matthew Capobianco_
William H. Ng, Esq.
Matthew R. Capobianco, Esq.
Littler Mendelson, P.C.
290 Broadhollow Road, Suite 305
Melville, NY 11747

*Attorneys for Defendants*

cc:   All counsel (via ECF)

www.PeltonGraham.com